UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

BARBARA GODDARD,

            Plaintiff,

    -against-

CITIBANK, NA et al.,

            Defendants.
----------------------------------------------------------------X

NOT FOR PUBLICATION

MEMORANDUM & ORDER

04-CV-5317(NGG) (LB)

GARAUFIS, District Judge.

This case involves a state foreclosure proceeding against Plaintiff Barbara Goddard ("Plaintiff" or "Goddard"), a *pro se* litigant who alleges to have been the victim of an illegal foreclosure and imminent eviction stemming from Defendants' erroneous claims that she is in default of her mortgage and that she cancelled a mortgage insurance policy. Plaintiff has brought suit pursuant to 42 U.S.C. § 1983 against Citibank, NA, Citicorp Mortgage Protection Plan, their underwriters and attorneys, and the state court judge who issued the judgment of foreclosure ("Defendants").

At this time, the court considers the Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Defendants' motion is granted in part and denied in part.

**I.    Factual Background**

The facts as alleged in the complaint are deemed to be true for the purposes of this motion. Plaintiff is and has been for all relevant periods a resident of 1025 Hendrix Street,

1

Brooklyn, New York. (Compl., at 1.) On March 5, 1990, Joseph and Barbara Goddard received a $130,500 mortgage from Citibank, NA to purchase the residence. (Mortgage Documents and Credit Report, annexed as Compl., Ex. A, at 6-7.) Pursuant to the mortgage agreement, the Goddards were to pay $1,242.78 per month for thirty years. (Id. at 7.) The Goddards also had mortgage insurance through Citicorp Mortgage Protection Plan, underwritten by Family Guardian Life Insurance Company. (Compl., at 2.) Under the terms of the insurance plan, the insurer would cover remaining payments on the mortgage in the event of the death of Mr. Goddard. (See Justice Clemente Memorandum and Order, dated July 3, 2001 ("Clemente M&O"), annexed as Compl., Ex. B, at 3.)

Defendants allege that the Goddards were in default of their mortgage payments from June through August, 1996. (Bizzaro Decl. ¶ 6; Clemente M&O, at 1 n.1, 3.) Defendants further claim that Joseph Goddard called Citibank, NA and the Citicorp Mortgage Protection Plan on February 24, 2002 to cancel the insurance policy, and that the Goddards signed the necessary cancellation documents before Joseph Goddard died on October 4, 1996. (Id.; Compl., at 6.) It is uncontested that Plaintiff has not made any mortgage payments since her husband's death.

In 1996, Citibank, NA brought a foreclosure proceeding in Brooklyn state court, in which Plaintiff initially defaulted. Plaintiff moved to vacate the default judgment and filed an answer, and Citibank, NA moved to strike the answer and for summary judgment, which was granted. (Bizzaro Decl. ¶ 7.) Plaintiff then moved to renew and reargue the summary judgment motion, which Justice Nicholas A. Clemete granted on July 3, 2001. (Id.) Justice Celemente referred to Justice Maxine Archer the question of "whether defendant defaulted on the mortgage payments after May 1996 and whether the mortgage insurance was canceled in 1992." (Clemente Order, at

5.) Justice Archer conducted a hearing, after which she found that "no mortgage payments were made by Mrs. Goddard since October 1996 and that Mrs. Goddard is in default under the terms of the mortgage agreement . . . [and] that no mortgage insurance was paid by the Goddards to citibank [sic] since 3/10/92 when the policy was cancelled by them." (Order of Justice Maxine Archer, dated January 22, 2002 ("Archer Order"), annexed as Bizzaro Decl., Ex. E, at 5.)

On May 19, 2003, Justice Bert A. Bunyan issued a Judgment of Foreclosure and Sale. (Bunyan Judgment, annexed as Bizzaro Decl., Ex. G, at 6-13.) The property was sold to Citibank, NA on September 18, 2003 for $271,711.82, the proceeds of which paid the mortgage and associated interest and costs, referee fees, and attorney's fees for the foreclosure proceedings. (Referee's Deed, annexed as Bizzaro Decl., Ex. F, at 1.) On May 28, 2004, Justice Bunyan granted Citibank, NA's motion for possession, ordering that the Sheriff of Kings County eject Plaintiff from the premises. (Bunyon Order, annexed as Bizzaro Decl., Ex. H, at 2-13.)

The stress from the foreclosure proceedings in front of Justice Bunyon caused Plaintiff to suffer from a stroke in the courtroom in November 2003, which required the services of an emergency ambulance and 13 days of hospitalization. (Compl., at 2-3, Ex. B, at 7-8.)

In the instant complaint, filed December 7, 2004, Plaintiff claims that she tendered two checks on August 23 and August 25, 1996 to the mortgagor to bring all payments up to date, but defendants erroneously failed to apply the payments to her mortgage, and instead returned them to her. (Compl., at 5.) Plaintiff urges that she was never in default of mortgage payments on her home, as she made all payments up until her husband's death in October 1996. (Id.)

Plaintiff also alleges that Citicorp Mortgage Protection Plan erroneously canceled her and her husband's mortgage insurance plan prior to his death. (Id. at 6.) Plaintiff contends that she

3

never signed the mortgage insurance cancellation form in 1992, and submits that a handwriting expert has stated that Mr. Goddard forged her signature. (Id.) Plaintiff alleges that Justice Archer based her decision on misrepresentations by Citibank, NA, its attorney Certilman Balin Adler & Hyman, LLP, and Citicorp Mortgage Protection Plan. Specifically, she claims that they misrepresented that on February 24, 1992, Joseph Goddard called Citibank, NA and/or Citicorp Mortgage Protection Plan to cancel the mortgage insurance policy, that Plaintiff signed an insurance policy cancellation form, that it informed Plaintiff at the time that the insurance plan was cancelled, and that Plaintiff's monthly payments decreased after 1992 to reflect the cancellation, when in fact the payments increased. (Id. at 4, 6.)

Plaintiff asks that this court vacate the ejectment order, award compensatory and punitive damages for the loss of her home, and the stroke which caused her extensive hospitalization, and award to her legal fees and costs incurred in the foreclosure proceedings. (Id. at 8.)

## II. Discussion

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a

4

plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Because Plaintiff is proceeding *pro se*, her pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

Similar to a motion for failure to state a claim, when a court reviews a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it accepts as true all material factual allegations in the complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In contrast to a 12(b)(6) motion for failure to state a claim, when deciding a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, the court should not draw "argumentative inferences" in favor of the party asserting jurisdiction. See Atlantic Mut., 968 F.2d at 198 (internal citations omitted). In a challenge to the court's subject matter

5

jurisdiction over a case, a court "may consider materials extrinsic to the complaint." Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).

Where, as here, a motion to dismiss is made pursuant to both Rules 12(b)(1) and 12(b)(6), the jurisdictional motion must be considered first because if I dismiss the complaint for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined." United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1156 (2d Cir. 1993) (internal quotation and citation omitted); see also Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

**B.     Lack of Subject Matter Jurisdiction**

Defendants urge that this court lacks jurisdiction over this matter pursuant to the *Rooker-Feldman* doctrine, because plaintiff "is attempting to recast her challenge to the outcome of the New York Supreme Court foreclosure proceedings as a § 1983 claim." (Def.'s Mem. Supp. Mot. Dismiss, at 9.) The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005). Thus, to properly invoke *Rooker-Feldman*, the defendant must show that the plaintiff: (1) lost in state court; (2) complains of injuries caused by that state court judgment; (3) invites the district court to review and reject the state court judgment; and (4) commenced the federal suit after

6

entry of the state court judgment. Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

It is uncontested that Plaintiff lost in state court, and that she commenced this federal suit after entry of the state court judgment.[1] Next, it is clear that the injuries alleged in the complaint, that Plaintiff has lost possession of her home, and that she suffered a stroke as a result of the stress caused by the foreclosure proceeding, were caused by the state court judgment. Therefore, the only question that gives this court pause is whether Plaintiff's claims invite this court to review and reject the state court judgment.

The gravamen of Plaintiff's claim is that Defendants Citibank, NA, Citicorp Protection Mortgage Protection Plan, Family Guardian Life Insurance Company, and Certilman Balin Adler & Hyman LLP misrepresented the facts to the state court in the foreclosure proceeding, and that Justice Bunyon's acceptance of these misrepresentations constituted negligence, and that these actions caused Plaintiff to suffer a stroke and violated her constitutional rights.[2] To the extent that Plaintiff asks that this court find the Judgment of Foreclosure to be invalid because her

---

[1] The Supreme Court has held that the *Rooker-Feldman* doctrine is only properly invoked when a final state court decision has been reached. Exxon Mobil, 125 S. Ct. at 1527; see also Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005) ("There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action."). Plaintiff has not alleged, and there is nothing in the record to show that Plaintiff appealed the state court judgment, dated May 19, 2003. A judgment becomes final when the state court ruling carries preclusive effect. Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 & n.10 (1st Cir. 2005). Therefore, the state court proceeding ended for *Rooker-Feldman* purposes when plaintiff allowed the time for appeal to lapse without filing an appeal in state court.

[2] Plaintiff also complains that Defendants attempted to broker an agreement whereby Plaintiff would surrender possession of the residence in return for monetary compensation. (Compl., at 3.) I note without discussion that an attempt to settle or to mediate the settlement of a civil action without any further allegation does not state a claim.

mortgage payments were up to date and her insurance policy was never cancelled, I find that this claim is barred by the *Rooker-Feldman* doctrine. Such a claim seeks to relitigate the precise issues decided by Justice Archer and to overturn the judgment of foreclosure, which meets the substantive *Rooker-Feldman* requirement that "the federal plaintiff . . . seek[s] federal court review and rejection of the state-court judgment." Hoblock, 422 F.3d at 85.

Having decided that Goddard's claim regarding the invalidity of the judgment of foreclosure is an impermissible attempt to relitigate the state action under the *Rooker-Feldman* doctrine, I must now turn to whether her remaining claims are also foreclosed by *Rooker-Feldman*. The first task for this court is to identify what other cause(s) of action that *pro se* Plaintiff articulates. The complaint accuses Defendants (apart from Judge Bunyon) of misrepresenting material facts to the state court in order to procure a judgment of foreclosure against Plaintiff, which caused her to lose possession of her home and to suffer a stroke.[3] For the purposes of this motion, I find that the complaint primarily pleads two causes of action:[4] (1) *conversion* in that Plaintiff alleges that Defendants wrongfully invoked the legal process by means of deceit and fraud to obtain a judgment of foreclosure, see, e.g., Smith v. Weinberger, 994 F. Supp. 418, 421 (E.D.N.Y. 1998) (citing Hof v. Mager, 208 A.D. 144, 203 N.Y.S. 161 (1st Dep't 1924)); and (2) *intentional infliction of emotional distress*, in that Plaintiff alleges that

---

[3] I shall address the sufficiency of these allegations in considering Defendants' 12(b)(6) motion to dismiss.

[4] Plaintiff may also be able to state a cause of action for fraud upon the court. However, this claim must be made *in the state court* that issued the judgment of foreclosure. "It is settled law that a court has inherent power to vacate *its own* judgment on proof that fraud has been perpetrated on the court." Levitin v. Homburger, 932 F. Supp. 508, 518-19 (S.D.N.Y. 1996) (emphasis supplied) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). "This power encompasses a judicial sale conducted under court orders." Id.

8

Defendants' wrongful actions caused her to suffer severe emotional distress and attendant physical injury. See, e.g., Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Howell v. New York Post Co., 81 N.Y.2d 115, 121 (N.Y. 1993).

Defendants urge that *Rooker-Feldman* prevents Plaintiff from asserting *any* claim that would imply the invalidity of the Judgment of Foreclosure, because it "either directly or indirectly challenges a state court judgment . . . ." (Def's Mem. Supp. Mot. Dismiss, at 7.) Defendants rely on Weinberger, in which a court in this district held that a plaintiff who alleged, *inter alia*, fraud and conversion in obtaining a judgment of foreclosure, was barred by *Rooker-Feldman* from maintaining the action in federal court. Weinberger, 994 F. Supp. at 424. In that case, the court held that the plaintiff's conversion claim was precluded by the *Rooker-Feldman* doctrine because the "complaint is, at the very least, an indirect challenge to the default judgment of foreclosure entered in the New York Supreme Court." Id. At the time that it ruled, the Weinberger court properly relied on the then-leading Second Circuit opinion on the *Rooker-Feldman* doctrine, Moccio v. New York State Office of Court Admin, 95 F.3d 195, 199-200 (2d Cir. 1996). In Moccio, the Second Circuit held that federal claims that are "inextricably intertwined" with a state court judgment are barred under *Rooker-Feldman*. Id. at 199-200. Thus, the district court in Weinberger found that the *Rooker-Feldman* doctrine barred a subsequent conversion suit because it "indirectly challenges the holding or decision of a State court by raising issues in federal court that are 'inextricably intertwined' with the State court's decision." Weinberger, 994 F. Supp. at 243.

However, Moccio is no longer good law. The Supreme Court, in Exxon Mobile, found that the Moccio Court's formulation of *Rooker-Feldman* "extend[s] far beyond the contours of

9

the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." Exxon Mobile, 125 S. Ct. at 1521 (citing Moccio, 95 F.3d at 199-200). The Second Circuit has since found that the "inextricably intertwined" language "has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in Exxon Mobile." Hoblock, 422 F.3d at 87. Thus, to the extent that Defendants, in arguing that this court should adopt the reasoning in Weinberger, seek to have this court rule that plaintiff's suit is foreclosed by Moccio, this court concludes that Moccio has been superseded by Exxon Mobile.

The Exxon Mobile Court held that under certain circumstances, claims that collaterally attack a state court judgment are not barred under the *Rooker-Feldman* doctrine. "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Exxon Mobil, 125 S. Ct. at 1527 (quoting GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). As an exception to the *Rooker-Feldman* doctrine, "[a] federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake . . . .'" In re Sun Valley Foods Co., 801 F.2d 186, 189 (6th Cir. 1986) (quoting Resolute Insurance Co. v. State of North Carolina, 397 F.2d 586, 589 (4th Cir. 1968)).

I find that Plaintiff's allegations of conversion and intentional infliction of emotional distress are not precluded by the *Rooker-Feldman* doctrine. While the Plaintiff's remaining

claims deny a legal conclusion reached by a state court, her claims are of the type held by the Court in Exxon Mobil to be independent from the state court judgment, because they allege *fraud in the procurement* of the judgment, independent from the barred claim that the state court issued an incorrect decision regarding the law or the evidence presented to it. Nor do the Plaintiff's claims invite this court to vacate the judgment of foreclosure. The remedies sought in the claims of conversion and intentional infliction of emotional distress, i.e. money damages unavailable in the state court proceeding,[5] strongly support the conclusion that these claims are independent from the state court judgment. As a result, I find that Plaintiff's conversion and intentional infliction of emotional distress claims are not precluded by the *Rooker-Feldman* doctrine and this court does have jurisdiction to hear them.

C.  **Plaintiff's Section 1983 Claim for Fraud by Judge Bunyon**[6]

Title 42 of the United States Code, Section 1983 allows citizens to sue a state official for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. Section 1983 does not create new rights; it merely provides a mechanism "for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citations omitted).

Plaintiff sues Justice Bert Bunyon for "misdeeds and atrocities that [the] Judge . . .

---

[5] A cause of action for conversion pursuant to a wrongfully obtained judgment is generally not to vacate the underlying judgment, but rather seeks to recover "the fair market value of the converted property at the time and place of the conversion, to which interest may be added." Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp., No. 85-Civ. 5399, 1991 U.S. Dist. LEXIS 3614, at *35 (S.D.N.Y. March 25, 1991).

[6] There is no indication that Judge Bunyon was served with a summons and complaint or has otherwise appeared in this action. However, as I now dismiss Plaintiff's claim against Judge Bunyon, the issue of whether this court has personal jurisdiction over him is moot.

allowed to foster in the State Supreme Court in Kings County . . . ." (Compl., at 2.) The alleged illegal conduct that Plaintiff complains of is that the judge failed his "judicial responsibility" in allowing Defendants to bring suit against Plaintiff in spite of Judge Celemente's finding that the plaintiff's averments warranted a trial. (Compl., at 3.)

The Supreme Court has "held that state judges are absolutely immune [in § 1983 lawsuits] from liability for their judicial acts . . . ." Briscoe v. Lahue, 460 U.S. 325, 334 (1983) (citing Pierson v. Ray, 386 U.S. 547 (1967), Stump v. Sparkman, 435 U.S. 349 (1978)). Plaintiff has not stated in her complaint that Judge Bunyon engaged in any conduct that caused her injury apart from his judicial function. See id. at 336. As a result, Judge Bunyon has absolute immunity, and Plaintiff's claims against Judge Bunyon are dismissed.

### D. Plaintiff's State Claims

Plaintiff's remaining claims allege that Defendants Citibank, NA, Citicorp Mortgage Protection Plan, Family Guardian Life Insurance Company, and Certilman Balin Adler & Hyman LLP fraudulently procured a judgment of foreclosure from Plaintiff in state court, causing her to lose her home and suffer a stroke. I note from the outset that these allegations do not constitute a § 1983 action, because there is no reasonable inference that would allow this court to conclude that these defendants in their alleged activities acted under color of law. See, e.g., Spear v. West Hartford, 954 F.2d 63, 68 (2d Cir. 1992) ("A private defendant may be held liable only as 'a willful participant in joint activity with the State or its agents.'" (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970))). I shall therefore consider whether Plaintiff alleges a state claim for conversion or intentional infliction of emotional distress that may be entertained by this

court.⁷

I must first proceed to determine whether these claims are barred under principles of res judicata (claim preclusion), or collateral estoppel (issue preclusion). Under New York law, issue preclusion applies if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Phifer, 289 F.3d at 56. "The burden rests upon the proponent of collateral estoppel to demonstrate that the issues in question were actually and necessarily decided." Richards v. City of New York, No. 97-Civ-7990, 2003 U.S. Dist. LEXIS 8037, at *26-*27 (S.D.N.Y. May 7, 2003) Defendants do not argue, and there is nothing in the record to support the inference, that Plaintiff has had a full and fair opportunity to litigate these issues prior to the instant complaint. The Defendants having failed to meet their burden, I hold that Plaintiff's state claims are not subject to issue preclusion. See id. at *37-*41 (finding that plaintiff did not have a full and fair opportunity to litigate issue despite fact that issue was necessarily decided upon in previous litigation)

Claim preclusion applies under New York law if a plaintiff seeks "to litigate those matters for which a valid final judgment ha[s] already been entered in a prior action when the

---

⁷ I note for the record that there remains the question of whether this court should exercise supplemental jurisdiction over Plaintiff's remaining state law claims. A district court "may decline to exercise supplemental jurisdiction over a [state law] claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also United Mine Workers of America v. Gibbs, 338 U.S. 715, 726 (1966). Section 1367 directs that this court has the discretion to decide whether or not to exercise supplemental jurisdiction over Plaintiff's state law claims. As defendants have not raised this issue, and plaintiff is *pro se* and may be barred by the statute of limitations were this court to dismiss this action, I decline at this point to dismiss the claims. As this M&O grants Plaintiff leave to amend her complaint, if Defendants feel that this court should decline supplemental jurisdiction over her state law claims, they are free to argue this issue in the event that Plaintiff files an amended complaint.

claims interposed could have and should have been litigated in that former action." Weinberger, 994 F. Supp. at 421 (quoting Romano v. Astoria Federal Sav. & Loan Ass'n, 111 A.D.2d 751, 752, 490 N.Y.S.2d 244, 245 (2d Dep't 1988)). "However, New York law also provides that a plaintiff may attempt a collateral attack on a judgment based either on a lack of jurisdiction, or a demonstration that the prior judgment was procured by fraud." Id. (quoting Bell v. Town of Pawling, 146 A.D.2d 729, 730, 537 N.Y.S.2d 214, 215 (2d Dep't 1989)). As stated *supra*, Defendants do not argue that Plaintiff's conversion and intentional infliction of emotional distress claims have been alleged prior to this action. Granting Plaintiff a judgment of money damages would not require this court to invalidate the judgment of foreclosure. Moreover, these causes of action accrued after the foreclosure proceedings. The Judgment of Foreclosure was issued in May 2003. Plaintiff's cause of action for conversion accrued in September 2003, when the property was sold. Plaintiff's cause of action for intentional infliction of emotional distress accrued when she suffered from a stroke in November 2003. As a result, Plaintiff is clearly not barred by res judicata from maintaining this action.

Having decided that Plaintiff's claims for conversion and intentional infliction of emotional distress are not foreclosed under preclusion principles, I shall proceed to examine the sufficiency of Plaintiff's allegations under 12(b)(6) standards.

    *1.    Conversion*

In assessing Plaintiff's conversion claim, her allegation that Defendants employed fraud in the procurement of the judgment of foreclosure triggers heightened pleading standards pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

14

with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Thus, in examining this claim, I shall consider whether Plaintiff is in compliance with the heightened pleading standards for fraud as stated in Fed. R. Civ. P. 9(b).

"Under New York law, conversion is any unauthorized exercise of control by one who is not the owner which interferes with a superior possessory right of another in property." Tese-Milner v. TPAC, LLC (In re Ticketplanet.com), 313 B.R. 46, 69 (Br. S.D.N.Y. 2004). A conversion claim must allege that the contested acts "are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." Fraser v. Doubleday & Co., 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984). Where a judgment of foreclosure underlies the conversion claim, plaintiff must allege "that the foreclosure was wrongfully obtained." Weinberger, 994 F. Supp. at 421 (citing Hof v. Mager, 208 A.D. 144, 203 N.Y.S. 161 (1st Dep't 1924), Korman v. R.H. Macy & Co., 142 N.Y.S.2d 455 (Sup. Ct. Queens Cty. 1955), 23 N.Y. Jur. 2d Conversion § 28).

Plaintiff alleges that she is the actual owner of 1025 Hendrix Street, that she paid all monthly mortgage payments for that property, and that she never cancelled the mortgage insurance policy, which provided for full payment of the mortgage balance when her spouse died. She further alleges that Defendants made a number of knowingly false representations in the

foreclosure proceeding, including that she in fact did cancel the insurance policy, that Defendants informed her prior to her spouse's death that she canceled her insurance policy, and that she defaulted on her mortgage payments prior to her husband's death. However, she does not specify who made these statements, the circumstances in which these statements were made (e.g. if they were made as a part of or outside of the foreclosure proceeding, in front of which judge they were made, or if the statements were credited by the judge), and if the statements were material to the judge's decision. As a result, I find that Plaintiff has failed to meet the Rule 9(b) standards of pleading a fraud-based claim.

### 2. *Intentional Infliction of Emotional Distress*

"Under New York law, a claim of intentional infliction of emotional distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the [in]jury; and (4) severe emotional distress.'" Conboy, 241 F.3d at 258 (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)). The complained of conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (quoting Stuto, 264 F.3d at 827).

Plaintiff in her complaint has failed to allege the first three elements of this claim. Regarding the first prong, extreme and outrageous conduct, Plaintiff has not described any conduct that rises to the requisite level of outrageousness. For examples, she has made no allegations of physical threats, verbal abuse, or public humiliation. Stuto, 164 F.3d at 828. Plaintiff must allege that Defendants knew or should have known that their conduct would have

16

caused her severe emotional distress, and must also link the abusive conduct in question to the stress that led her to suffer a stroke.

For these reasons, I find that Plaintiff's complaint does not state a claim for intentional infliction of emotional distress. Furthermore, I have doubts based on the allegations in her complaint that Plaintiff will be able to state a claim in an amended complaint. However, as Plaintiff is *pro se*, this court must grant Plaintiff an opportunity to amend her complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). Therefore, I decline to dismiss plaintiff's conversion and intentional infliction of emotional distress claims at this moment. Instead, I shall grant Plaintiff sixty (60) days to amend her complaint to plead her claims with particularity. To avoid dismissal of her conversion claim, Plaintiff in her amended complaint must specify the statements made by Defendants that she believes are fraudulent, the speakers who made them, the date and place in which the statements were made, and why they are fraudulent. To state a claim for intentional infliction of emotional distress, plaintiff must allege the specific conduct that rose to the requisite level of outrageousness, that the speaker should have known that the conduct would cause severe emotional distress, and that the conduct caused her emotional distress.

## III. Conclusion

For the aforementioned reasons, the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is hereby GRANTED in part and DENIED in part.

All of Plaintiff's claims except her state law claims for conversion and intentional

17

infliction of emotional distress against Citibank, NA, Citicorp Mortgage Protection Plan, Family Guardian Life Insurance Copy, and Certilman Balin Adler & Hyman LLP are hereby dismissed. With respect to these remaining claims, Defendants' motion to dismiss is denied at this time. The Plaintiff is granted sixty (60) days from the date of the issuance of this Order to submit to the court an amended complaint that pleads with particularity her conversion and intentional infliction of emotional distress claims. The Defendants will have thirty (30) days from the date of the Plaintiff's submission, if any is made, to respond. Upon submissions by all parties, the court will reevaluate this claim. If the Plaintiff fails to submit an amended complaint in compliance with this order, her remaining claims will be dismissed.

SO ORDERED.

Dated: March 27, 2006                        /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                            Nicholas G. Garaufis
                                                     United States District Judge